————o————

WILLIAM BRADLEY, Respondent *vs.* CHARLES WEST, Appellant.

1. *Acknowledgment—Certificate, allegation of as to venue.*—Where a conveyance is acknowledged before an officer authorized to take the same within the limits of his jurisdiction, it will be presumed that the acknowledgment was actually taken within such limits, without an averment of that fact contained in the certificate.

2. *Land and land titles—Legal seizin follows legal title—Adverse possession, what necessary to overthrow—Statute of limitations.*—Where one has the legal title, the legal seizin and possession follow ; and any one setting up or claiming under an adverse possession, must show that he, or those under whom he claims, have had the open, notorious and continued adverse possession, under claim of right or color of title, for the period limited by the statute.

3. *Land and land titles—Possession of part of a tract, with title to whole, possession of all—Ouster—Entry by claimant without legal title—Possession of, how restricted—Construction of statute.*—Where the legal owner is in the actual possession of a part of the land of which he has the fee, the law invests him with the possession of the whole; and he can only be dispossessed by actual ouster ; and one afterward entering on the land without the legal title, will be restricted in his possession to the part actually occupied or cultivated.   The statute, (Wagn.Stat., 917, ? 5) making the possession of part of a tract of land under a mere color of title, in certain cases, possession of the whole, applies only where there is no legal occupancy by the owner of any part.

4. *Adverse possession—Proof of good faith, when not necessary.*—In general it is sufficient that the possession of land be under claim of title, to clothe it with the character of an adverse holding, and to give it efficacy as a defense—when of sufficient duration to be a bar—without proof that the possession was taken in good faith.   But there must be an intent to claim and possess the land.

5. *Military bounty land—Entry upon, must be made when, etc.*—Under a proper construction of the statute (Wagn. Stat., 915–16, ?? 1, 2) an entry upon military bounty land, to be valid and effectual must be made before the expiration of the time limited by ? 1 that is, within two years after the taking of adverse possession; otherwise the right of action is gone, and whenever that right is barred, the right of entry is closed.

3—VOL. LX.

6. *Legislature—Journals—How far evidence.*—Printed copies of the journals of the legislature are only *prima facie* evidence of the original legislative rolls, and may be rebutted by testimony showing their inaccuracy. Hence they cannot be used in the Supreme Court, where not introduced as evidence in the trial of the cause below.

*Appeal from Carroll Circuit Court.*

*L. H. Waters*, for Appellant.

I. The deed from Horton to Bradley should have been excluded. It was acknowledged more than eight years after date, and the certificate fails to show that the justice acted in his own or in any town. (Carpenter vs. Dexter, 8 Wall., 513 ; Merchants Bank, etc. vs. Harrison 39 Mo., 433.)

II. The court erred in giving plaintiff's fifth instruction. This is not a case of mixed possession. Defendant, by his entry under claim of right and color of title, acquired seizin co-extensive with the premises covered by his deed. (Wagn. Stat., 917, § 5 ; Tyl. Ej., 904.) And if, after his entry, plaintiff took possession of any part of the land so entered upon, defendant was disseized only to the extent of the part actually so occupied. (Schultz vs. Lindell, 30 Mo., 310 ; Jackson, vs. Vermilyea, 6 Cow., 677.) In McDonald vs. Schneider, (27 Mo., 405) the true owner had the prior possession, and the defendant intruded thereon. The case of Griffith vs. Schwenderman, (27 Mo., 412) upon which the plaintiff relied in the court below, will not sustain this instruction. That case was substantially overruled in Crispin vs. Hannavan ( 50 Mo., 545).

III. This suit being to recover military bounty land, should have been begun within two years after the right of action accrued. (Wagn. Stat., 915, § 1.) This right accrued when defendant's possession became adverse. (Tyl. Ej., 927.) Hence, plaintiff's action is barred. (Totten vs. James, 55 Mo., 494.)

An entry made as a claim, to avoid the statute of limitations, must be while there is an existing right of possession, otherwise the right of entry is gone. (3 Cr. Dig. Tit., 31, ch. 2, §§ 16, 19, 21, 37 ; 2 Hill. Real Pr., 170, § 11 ; 156, § 7 ;

2 Sm. Lead. Cas., 592; 2 Greenl. Ev., § 545, note 3; Till. Ad. Ej., 100.) When the action of ejectment is barred, the right of entry is tolled. (Tyl. Ej., 70; Smith vs. Lorillard, 10 Johns., 356; Jackson vs. Wheat, 13 Johns., 43; Pillow vs. Roberts, 13 How., 472; Parish vs. Stephens, 3 Serg. & R., 298; Waln vs. Shearman, 8 Serg. & R., 357; Cranmer vs. Hall, 4 Watts & S., 36; Bigler vs. Karns, 4 Watts & S., 137; Bayard vs. Inglis, 5 Watts & S., 465; Blackw. Tax Tit., 661-2.)

*M. T. C. Williams*, for Respondent.

I. The acknowledgment was in form. (2 Seld. 422; Thurman vs. Cameron, 24 Wend., 87; 5 Smith, [N. Y.] 279; 1 Wend., 406; 1 Comst., 77; 41 N. Y., 402; 20 Ill., 402.)

II. The fifth instruction given by the court for plaintiff is proper. Actual occupancy by the rightful owner of part of the land, is constructive possession of the whole, unless he is disseized by actual occupation. (Hall vs. Powell, 4 Serg. & R., 465; Schultz vs. Lindell, 30 Mo., 317; Cottle vs. Snyder, 10 Mo., 770; McDonald vs. Snyder, 27 Mo.,405; Johnson vs. Prewitt, 32 Mo., 553; Crispin vs. Hannavan, 50 Mo., 545; Ang. Lim., § 410; Ad. Ej., 4 ed., 55–6, and cases cited.)

III. The eighth instruction given for plaintiff is correct law.

The effect of an entry on land by the legal owner *animo clamandi*, is to restore to him the seizin and possession. (3 Bl. Com., 175; 1 Salk., 246; Altemas vs. Campbell, 9 Watts, 28; 2 Cr. Dig., 501; Robinson vs. Sweet, 2 Greenl. Rep., 316; Ang. Lim., § 378; Holtzapple vs. Phillibaum, 4 Wash. C. C., 356.)

Such entry will avoid the statute of limitations. (Gree vs. Rolle & Newell, 1 Ld. Raym., 716; Hayward vs. Kinsey, 12 Mod., 573; Ford vs. Grey, 1 Salk., 286; S. C., 6 Mod., 44; Goodright vs. Carter, Dougl., 486; Bull. N. P., 102, A.; Vin. Abr. Tit., "Entry"; Com. Dig. Tit., "Claim;" Bac. Abr. Tit. "Limitations;" Till. Ad. Ej. C., 4, p. 103.)

The Pennsylvania statute of 1785, of which ours is a copy, has been repeatedly construed, and under the decisions

relating thereto, an entry has always been held to avoid the statute. (Altemas vs. Campbell, *supra;* Altemus vs. Long, 4 Barr, 254; Hinman vs. Cranmer, 9 Barr, 40; Ingersoll vs. Lewis, 1 Jones, 212; Miller vs. Shaw, 7 Serg. & R., 129; Hood vs. Hood, 1 Casey, 417; Hoopes vs. Garver, 3 Harris, 517; Carlisle vs. Stitler, 1 Penn., 8; Holtzapple vs. Philli baum, *supra;* McCombs vs. Rowan, 59 Penn. St., 418; Doug las vs. Lucas, 63 Penn. St., 12.) And by the act of April, 1859, (1 Pamph. Laws, 603) the provisions of 4 Anne, similar to the 2nd section of our Limitation act, requiring suit to be brought within one year after entry, are made a part of the limitation Laws of that State.

Appellant may claim, however, that the statute only ap plies where there has been an actual ouster or disseizin in the strict common law sense of the term, by an intruder or wrong doer, and not where one takes possession of vacant land under claim and color of title.

WAGNER, Judge, delivered the opinion of the court.

This was an action of ejectment to recover a quarter section of land within the military bounty tract.

The plaintiff proved title by a regular chain from the patentee of the government, and the defendant relied on the statute of limitations.

On the trial the plaintiff introduced evidence tending to show that on the morning of the 26th of April, 1869, he went on the land in company with another person for the purpose of leasing the same to him; that he went around it and found the corners, and stepped off forty acres and threw up at the corners small mounds. He did not succeed in consummating the lease, and whilst he was on the land, defendant and his teams came upon it and were ordered off by plaintiff. He told defendant that he owned the land and was there to take possession and forbid the defendant doing any work upon it.

Defendant claimed that his lessor, one Lombard, owned the land and forbade plaintiff improving it. Defendant's teams went to work plowing on the lands and some of his hands

built a rail pen on one side of it. Plaintiff then had some plowing done on another piece of the land and employed an agent to attend to it for him, and left for his home in New York. On the 22nd day of June, 1871, he returned and entered upon the land. He found that defendant had ten or twelve acres inclosed on the east side, and that his hired men. were plowing about four acres outside of the enclosure and adjoining it. He ordered them off and told them that he owned the land. Defendant's improvements were on the east side of the tract, and plaintiff's were on the west side.

Defendant read in evidence as color of title a deed from one Turner to Lombard for the land in question dated April 16th, 1869, for the consideration as therein stated, of one hundred and fifty dollars. He then gave evidence in reference to. his possession.

The cause was tried before the court sitting as a jury, and a judgment was given for the plaintiff.

The court gave four charges or requests for the plaintiff which will be noticed.

. The one numbered four in the series, declared that "the plaintiff having the legal title, the legal seizin and possession followed the title; and that the defendant setting up an adverse possession against such legal seizin and possession, must show, by evidence satisfactory to the court, that he, or those under whom he claims, have had a visible, notorious and continuous adverse possession of the land in controversy, under claim of right, and color of title thereto, during the period limited by the statute of limitations, before the commencement of this suit, otherwise the statute of limitations is no bar or defence against such legal seizin and possession."

The fifth request was that "if the court find from the evidence, that the plaintiff by himself, his agent or tenant, was in the actual possession of a part of the premises in controversy, as the legal owner of the same, within and during the time limited for the commencement of this suit, then the plaintiff had the legal possession of the whole of said premises, and could only be dispossessed thereof by actual ouster; that the

defendant having entered upon said premises, not having the legal title thereto, and occupied and cultivated a part of the same could only have possession of the part, so actually occupied and cultivated by him; that this adverse possession is to be taken strictly, and could not be made out by inference, but only by clear and positive proof; that it devolves upon the defendant to show by evidence satisfactory to the court, the character and extent of his actual possession; that such actual possession must have been open and uninterrupted, peaceable and continuous, for the whole time; next before the commencement of this action, limited by the statute of limitations, and that the plaintiff is entitled to recover all that part of the tract in controversy not so actually occupied by the defendant during the whole time limited by the statute of limitations prior to the commencement of this suit."

The sixth request declares that "to constitute adverse possession, so as to bar a recovery by the rightful owner, the party setting up such possession, must, in making his entry upon the land, and in acquiring such possession, act in good faith, under claim of right and color of the title thereto; and if the court find from the evidence, that the defendant knew when he entered upon the land that he had no legal title thereto, but knew it to be Bradley's land, and knew that the plaintiff was in the neighborhood for the purpose of taking possession and looking after the land; that when the defendant made his entry he found the plaintiff upon the land, claiming ownership and asserting title; that he did his plowing and built his rail pen for the purpose of preventing plaintiff from taking or acquiring possession of the premises, knowing him to be the rightful owner, then such possession, so acquired, will not serve the purpose of a foundation for an adverse possession, so as to bar the right of this plaintiff to recover."

The eighth declaration was that "if the court find from the evidence, that the plaintiff in June, 1871, as the legal owner of the land in controversy, peaceably and openly entered into and upon the same claiming to be such owner and intending to take possession of the same; that he made such

claim of ownership upon the land, and forbade the tenant of the defendant, or his servant, who was the only person found upon the land, from doing anything further upon the land, or making any further improvements thereon, then such entry, so made, put the plaintiff, for the time he was upon the land, in the actual possession of the premises; and if such entry was followed by the commencement of this action within one year after such entry was made, then such entry was sufficient and valid as a claim, to avoid the operation of the statute of limitations and the plaintiff must recover."

For the defendant the court declared the law to be; that the possession under color of title of a part of a tract or lot of land, in the name of the whole tract claimed, and exercising, during the time of such possession, the usual acts of ownership over the whole tract claimed, is deemed a possession of the whole tract.

The following declaration asked by the defendant was refused.

"If the defendant as the tenant of Lombard, under claim and color of title to the land in question, went into possession of a part of the same, in April, 1869, and for two years next ensuing, was and remained in the open, notorious and continuous adverse possession thereof, claiming the same for his landlord, Lombard, then the plaintiff's right of action is barred; and no entry will be sufficient or valid as a claim, unless made within the time in which an action may be brought for the recovery of such land, or the possession thereof; and if the plaintiff made an entry upon the land in question after the defendant had been in the open, notorious and continuous adverse possession of the same for more than two years, then such entry was not sufficient or valid as a claim."

An objection was raised to the introduction of one of plaintiff's deeds in evidence, on the ground that it was not acknowledged in conformity with the law of the State of New York, where the acknowledgment was taken, or in accordance with the provisions of the statute of this State. The acknowledgment was taken before a justice of the peace in Delaware Coun-

ty, and is in all things in due form except that the certificate does not state that he took it in the town for which he was officially acting, the law giving justices of the peace, power to take acknowledgments in the towns in which they resided. But we think the objection is not tenable. Where a conveyance is acknowledged before an officer authorized to take such acknowledgment, within the limits of his jurisdiction, it will be presumed that such acknowledgment was actually taken within such limits. (The People vs. Snyder, 41 N. Y., 397 ; Carpenter vs. Dexter, 8 Wall., 513.)

The fourth declaration, above alluded to in the plaintiff's series, states the law with substantial correctness and is sufficiently clear. There is no doubt about the proposition, that where a person has the legal title, the legal seizin and possession follow the title ; and any one setting up or claiming under an adverse possession, must show that he or those under whom he claims, have had open, notorious and continuous adverse possession under claim of right or color of title for the period limited by the statute.

The fifth instruction is also unobjectionable. Where the legal owner is in the actual possession of a part of the land of which he has the fee, the law invests him with the possession of the whole ; and he can only be dispossessed by actual ouster ; and a person entering on the land, not having the legal title, will be restricted in his possession to the part actually occupied or cultivated. The adverse possession of a disseizor, or of one who enters without right and retains possession by wrong, cannot extend beyond the limits of his actual occupancy. (St. Louis vs. Gorman, 29 Mo., 593; Schultz vs. Lindell, 30 Mo., 310; DeGraw vs. Taylor, 37 Mo., 310.)

The Statute provides that the possession, under color of title, of a part of a tract or lot of land, in the name of the whole tract claimed, and exercising during the time of such possession the usual acts of ownership over the whole tract so claimed, shall be deemed a possession of the whole of such tract (2 Wagn. Stat. p. 917, § 5). But this

section only applies where there is no occupancy by the legal owner of any part, and the person having the color of title is in possession of a portion of the premises, and then, as the remainder is not held by the real owner, the law extends the possession over the whole tract. The court gave an instruction for the defendant in the very words of the statute, and that taken in connection with the fifth declaration for the plaintiff leaves no ground for complaint.

. The 6th declaration requires qualification. Good faith may become an important element, in certain circumstances, in reference to defining the limits of the possession, and showing that the possession itself was not taken as a mere gambling speculation; but the general principle undoubtedly is, that it is sufficient that the possession of the land be under a claim of title to clothe it with the character of an adverse holding, and to give it efficacy as a defense, when of sufficient duration to be a bar. The requisites in order to constitute an actual possession are that there should be made an entry, so that there may be an ouster effected and an adverse possession begun, and that he who sets up the title, must go upon the lands with a palpable intent, to claim the possession as his own The intent to claim and possess the land is one of the qualities necessary to constitute a disseizin and to hold under an adverse possession. (Knowlton vs. Smith, 36 Mo., 507; 3 Washb. Real Prop. 125.)

The question now remaining arises out of the plaintiff's eighth request. The statute limiting the time in which recoveries must be had, for the possession of real estate, limits the period to ten years, except in cases of military bounty lands where the limitation is two years. (2 Wagn. Stat. p. 915, § 1.)

The second section of the limitation law provides, that "no entry upon any lands, tenements or hereditaments, shall be deemed valid as a claim, unless an action be commenced thereon within one year, after the making of such entry, and within ten years from the time when the right to make such entry descended or accrued." This section is the same as it

existed under the previous statute; and, as applicable to the limitations of ten years, it is meaningless and fails to provide any new or additional remedy. Whilst it declares that an action may be brought within one year after an entry is made, yet it abridges or limits the time to within ten years from the time when the right to make such entry descended or accrued. As the right to make the entry existed as soon as a cause of action arose in consequence of an adverse holding, the limitation is not in the least extended. The intention was doubtless different, but the statute is thus written.

The two years' limitation, in respect to military bounty lands, was first imported into the statute in the present revision, and in applying the second section to this class of claims, the latter part may be rejected. The question then is, when must the entry, to be valid and effectual, be made? The opinion of the court was, that the plaintiff had one year in which to make the entry after the two years had expired, or in other words, he might evade the bar of the statute and extend the time to three years, if he made the entry in time. When the statute has once run for the requisite time, it creates an estate, which cannot be divested by any act of the plaintiff. The entry to have any effect must be made with an intention to claim the property before the statutory period has expired; this causes a break in the continued adverse possession of the occupant, and extends the time for the plaintiff to bring his action. In the very able argument made by the plaintiff's counsel in this court, he has stated, that our law on this subject is the same as the law in Pennsylvania, and has cited cases to show that it is construed there as contended for by him, and as held by the court below. But an examination of the authorities shows that he is in error. In that State the period of limitation, required to bar an action for the recovery of real property, is twenty-one years. In the leading case of Altemas vs. Campbell, (9 Watts, 28) which is greatly relied on, Ch. J. Gibson in discussing the character and properties of an entry, uses the following language:

" In our act of 1785 is comprised the substance of 21 Jac. 1 C. 16, under which an entry has always had its common law properties ; and these have been attributed to it, under our statute, by the ablest men in the profession. In 1803 when the statute was about to close its bar in rights of entry in existence at its enactment, the agent of the Penn family, under the direction of the late Edward Tilghman, caused entries to be made into the messuages and lots in York and Carlisle, for the preservation of the proprietary quit rents. Indeed the statute expressly recognizes the conservative properties of an entry alone, by treating it as alternative for an action. These properties, however, are purely technical and are not to be favored. An entry puts the owner, for a time, in actual possession ; and, as that, in the case of a mixed occupancy, is referrable to him exclusively who has the right, it gives him, momentarily, the advantages of actual enjoyment ; and, momentarily displacing the adverse possession of the occupant, it instantly undoes all that his intrusion had done towards the accomplishment of a title. Yet it must be perceived that this effect is subversive of the purpose of the statute, which is to compel parties to settle their controversies while the evidence of their rights is attainable, and to put a reasonable period to the evils of a contested ownership. By repeated entries within periods of twenty-one years a contest might be kept on foot interminably, or till the occupant's proofs had perished, with those who could establish them."

By this opinion it appears plainly enough that the entry, to have any effect, must be made within the twenty-one years— the duration prescribed to complete the bar. Any other interpretation is totally inadmissible, as when the full time of the statute has elapsed, the title is vested in the occupant and the right of action is gone, and whenever the right of action is barred, the right of entry is tolled. The court therefore should have refused plaintiff's eighth request, and given the one for the defendant that asserted the converse proposition.

The plaintiff makes the further point in this court that the

whole limitation law as printed in our statutes is invalid, because not passed by the necessary constitutional majority, and to establish this jact the journals of the legislature are referred to. But the question was not raised in the Circuit Court, and we do not think it can be made here for the first time. The statute declares that the printed journal of the Senate and House of Representatives of this State, and all public documents and reports therein contained, and all reports or documents printed by order of the State, or of either House of the General Assembly or purporting to be printed by authority thereof, shall be *prima facie* evidence to the same extent that duly authenticated copies of the originals would be. (Wagn. Stat., p. 591, § 81.) The statute simply makes the journals *prima facie* evidence of what they contain.

When they are introduced in a cause they are liable to be rebutted by the opposite party by showing that they are incorrect, and that they are not in accordance with the original legislative rolls.

To allow them to be used here for the first time in a proceeding of this kind, would be to make them conclusive evidence, and deprive the other party of all opportunity for his protection. Therefore the point will not be considered in the case as now presented.

The judgment must be reversed and the cause remanded. The other judges concur.